FOURNET, Justice.
 

 This is a suit by an employee to set aside ’ the proceedings and judgment whereby he compromised his claim for compensation with his employer and its insurer and to recover compensation against the insurer for total and permanent disability, plus a penalty of SO per cent, to be paid in a lump sum, with legal interest, less the amount previously paid him.
 

 For cause of action plaintiff alleges that the settlement was made in contravention of the provisions of the compensation act, Act No. 20 of 1914, as amended, in that there was no legal or valid basis for the compromise, the allegations of the joint petition to the effect that he was intoxicated at the time of the injury and that there was a bona fide dispute between him and his employer as to his disability being without any foundation in fact. He further alleges that the petition was prepared by defendant’s attorneys upon the information furnished them by the defendant’s physicians and agents and that he, plaintiff, relying upon their representations, being without counsel or physician of his own, was fraudulently induced to sign the petition.
 

 The defendant denied the allegations of plaintiff’s petition and pleaded the validity of the judgment of compromise as res adjudicata.
 

 The matter is now before us for consideration on a writ granted the plaintiff to review the judgment of the Court of Appeal (199 So. 799) affirming the judgment of the lower court dismissing his suit.
 

 The facts pertinent to the issues in this case have been stated by the Court of Appeal to be -as follows:
 

 
 *930
 
 “Otto Puchner, 61 years of age, by accident arising out of and occurring in the course of his hazardous employment by Jackson Brewing Company, on March 12, 1938, sustained injury consisting of ‘an intertrochanteric fracture of the right femur’. He was sent to a local hospital, where he remained 54 days, after which he went to his home, under treatment of his employer’s physician. On February 22, 1939, the said physician concluded that he had practically recovered and could shortly return to work. Believing, however, that it might be some time before he could completely regain his strength and the normal use of his leg, the insurer of the employer sent its adjuster to discuss with him a compromise settlement. In addition to the amount already paid, a settlement for $500 was agreed upon and a joint petition was presented to the Civil District Court in which that court was asked to approve the compromise. Puchner was taken in person to the court and the district judge saw him and approved the settlement and thereafter the amount agreed upon was paid to him. In addition to the amount paid in settlement, Puchner, as we have said, had received the full compensation to which he was entitled during the period of admitted disability- — that is to say, from the time at which the accident had occurred until the time at which the settlement was made, so that the $500 was paid him as consideration for the compromise and no part of it was paid as compensation fot any of the period of admitted disability.”
 

 The Court of Appeal, however, despite its finding that “the record leaves no room for doubt that, at the present time [the time this suit was brought], Puchner is totally disabled and that there is no prospect that he will ever recover, and it is certain, therefore, that, had there been no compromise, he would have been entitled to a judgment for the maximum weekly amount and for the maximum period” (brackets ours), maintained the validity of. the judgment of compromise -and affirmed the judgment of the lower court refusing to set aside the same, being of the opinion that the compromise settlement was entered into in good faith and that there was a bona fide dispute between the plaintiff and his employer.
 

 The learned trial judge in his written reasons for judgment stated, and he is amply borne out by the record, “that the physician who made the report concerning the Plaintiff committed an error of fact; that the company, in settling for a temporary disability, committed an error of fact; that the Attorney who filed the petition and explained to the Plaintiff just what was being done committed, an error of fact; and the very Judge of the Court, who saw the Plaintiff and judged from outward appearances, committed an error of fact.” His comment with reference to this phase of the case is as follows: “We all thought that the Plaintiff was suffering from a temporary disability; and if a covenant such as a contract can be set -aside, and considering the humanitarian purposes of the Workmen’s Compensation Law, this Court feels that it should respectfully submit these facts for a consideration of their effect. The employer, in the presentation of his case utilizes the opinions of medical
 
 *932
 
 men and insurance specialists. The employee has no such advantages.” The judge then expressed the opinion “that the Plaintiff should be entitled to recover for a total permanent disability as set out in the Act; and that the compromise entered into on an error of fact should be set aside,” but he concluded that in view of his appreciation of the jurisprudence of the appellate courts of this state to the effect that a compromise entered into in good faith bound the parties thereto even though it might subsequently prove to have been based on errors of fact that he had no alternative but to dismiss the plaintiff’s suit.
 

 A thorough appreciation of the historical background of the workmen’s compensation laws and the mischief sought to be remedied thereby is necessary for a proper solution of the issues presented in the instant case.
 

 The legislative body of the State of Louisiana, conforming to a general movement prevalent throughout the country at the time, enacted the state’s first compensation legislation, known then as the Burke-Roberts Employers’ Liability Act, Act No. 20 of 1914, so -that the social obligations existing between the employee and employer might be readjusted to meet the modern trend. This act, with its amendments, has come in time to be referred to as the Workmen’s Compensation Act. The movement behind this legislation began first in Germany and spread to this country via England. A careful study and analysis will disclose that its purpose is primarily to “abolish the common-law system relating to injuries to employees as inadequate to meet modern conditions and conceptions of moral obligations, and substitute therefor a
 
 system
 
 based on a high conception of man’s obligation to his fellow man * * By that system the loss incurred as a result of the employee’s injury is recognized “as an element of the cost of production to be charged to the industry rather than to the individual employer, and liquidated in the steps ending with consumption, so that the burden is finally borne by the community in general. * * *” Vol. 1, Honnold’s Workmen’s Compensation 5, Section 2. See, also, Vol. 1, Schneider’s Workmen’s Compensation Law, Sections 1 and 2; 71 Corpus Juris 242, Section 15; and 28 Ruling Case Law 713, Section 2.
 

 It is obvious from a mere reading of Act No. 20 of 1914 that it was the intention of our lawmakers by enacting this legislation to follow this general trend in social development and to thereby insure that an employee whose wages were discontinued as the result of an injury sustained during the course of his hazardous employment would be paid weekly compensation on which to subsist during the period of his disability, in accordance with the schedule outlined in the act. Under subsection 9 (formerly subsection 8) of Section 8 of Act No. 20 of 1914, as amended, by Act No. 242 of 1928,
 
 where there is no dispute,
 
 the parties, by agreement, may have the amounts payable as compensation commuted to a lump sum settlement provided (1) the approval of the court is secured, and (2) the amount due is not discounted at a rate greater than 8 per cent per annum. Another form of lump sum settlement has been developed in our jurisprudence under
 
 *934
 
 the guise of a compromise whereby the amount payable as compensation may be commuted to a lump sum settlement at a rate of discount greater than 8 per cent per annum. In such cases the parties at interest merely present a joint petition to the court for its approval alleging the existence of a dispute between them and their agreement to settle their difference as therein outlined.
 

 A “compromise” is readily distinguishable from a “settlement” as may be seen from their definitions as stated by Corpus Juris Secundum: “A compromise is an agreement between two or more persons who, to avoid a lawsuit, amicably settle their differences on such terms as they can agree on. ‘Settlement’ is a broader term than ‘compromise,’ and, while a settlement may be the result of a compromise, it may also be arrived ’at which there is no dispute or controversy between the parties * * 15 Corpus Juris Secundum, Compromise and Settlement, 711, § 1. In the next section it is pointed out that: “Conflicting claims are essential to the validity of a compromise,
 
 one of its essential elements being the existence of a bona fide dispute or controversy between the
 
 parties, although it is immaterial what may be the real legal merits of the claim on either side. * * *” (Italics ours.)
 

 Let us examine the record in the instant case to determine whether or not at the time the compromise proceedings were instituted there was a dispute in fact between the plaintiff and his employer relative to his (plaintiff’s) right to recover compensation, first, because of his alleged intoxication at the time of the accident, and, second, as to his disability.
 

 Counsel for defendant stated in his brief that plaintiff was strongly suspected of having been intoxicated at the time of the accident. He bases this suspicion on the report of a specialist called in by the attending physician that the plaintiff was suffering from delirium tremens on the day following the accident. But counsel frankly admits in his brief, as he did in his oral argument, that the defendant “was unable to obtain any definite proof showing that Plaintiff was intoxicated,” and, consequently, compensation was paid him. It necessarily follows that when the compromise was effected eleven months later, that element of alleged dispute had passed out of the case.
 

 The other alleged ground for dispute seems to us to be equally lacking in genuineness. The joint petition does contain allegations on the face of which would show the existence of a dispute between the plaintiff and his employer as to whether plaintiff was able to resume work at the time the compromise was effected. It is alleged in the petition that Puchner claimed that at that time he was totally disabled and unable to resume his work, and that as a result of the injury he believed he would remain permanently partially disabled, and was entitled to compensation accordingly. On the other hand, the petition contains the allegation that the employer and its insurer claimed the-plaintiff’s condition had satisfactorily and consistently improved, and that according to the final report received from the attend
 
 *936
 
 ing physician by the defendant insurance company, plaintiff was able to resume work and was therefore not entitled to further compensation. These allegations, however, have been disproved by the record. A review of the entire transcript unmistakably shows, as was found by the trial judge, that the attending physician informed the plaintiff, as he did the defendant insurance company, -of his improvement and the belief that he would be able to return to work within a reasonable time, arid that the plaintiff himself at that time believed he would shortly recover. The only possible matter which could have been uncertain was the duration of plaintiff’s disability, and in our opinion it would be-in direct violation of the letter and spirit of the act to sanction speculation with respect to the duration of an employee’s disability, for the primary object of the act “was to provide an employee, whose wages were discontinued as a result of an injury sustained while serving his master, with funds to subsist on until he could return to work. * * *” Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185, 188.
 

 Counsel, for defendant contend that in the absence of fraud of misrepresentation a judgment compromising a compensation claim cannot be set aside, citing in support thereof two decisions of this court, namely, Musick v. Central Carbon Company, 166 La. 355, 117 So. 277, and Young v. Glynn, 171 La. 371, 131 So. 51, and the decisions of the Courts of Appeal of this state based thereon.
 

 The Musick case is the leading case in the jurisprudence of this state on the subject matter of the compromising of compensation' claims under the act. In that case J. P. H. Musick, who was injured while discharging the duties of his employment with the Central Carbon Company, died of pneumonia contracted some two - weeks after he returned to his home from the hospital. His employer contended that Musick’s death did not result from injuries sustained while in its employ. A compromise settlement was effected, with the approval of the court, whereby the widow was paid the sum of $3,000 for the common benefit of herself and minor children. Subsequently the widow, individually and on behalf of her minor children, instituted suit for the full amount of compensation due them under the act, with le- , gal interest, on the ground that the settlement was nothing more than a lump sum settlement and was made in contravention of law for the reason that the discount was at a greater rate than 8 per cent per annum, as provided in subsection 8 of Section 8 of the act (now subsection 9). The defendant pleaded the judgment of compromise as a bar to the suit. The court found that there existed a bona fide dispute as to the right of the deceased employee’s dependents to compensation and thus justified the compromise settlement, concluding that [166 La. 355, 117 So. 280]:
 
 “It was a substantial settlementj and one that cannot be said to be out of ac'cord with the statute.
 
 * * * ” (Italics ours.)
 

 The sole issue raised -in the case of Young v. Glynn was whether or not the compromise settlement had between the plaintiff and defendant had been obtained
 
 *938
 
 through fraud and misrepresentation, and the court, finding from the facts of the case that the plaintiff had failed to estab- ■ lish these charges, reinstated the judgment of the court of appeal, affirming the judgment of the lower court dismissing his suit.
 

 . As a result of certain expressions of the court in these two cases, an analysis of which 'show that they were not essential to the decisions, a jurisprudence has been ■established in the appellate courts of this state whereby the provision of the act prohibiting an amicable settlement of compensation claims in a lump sum at a greater rate of discount that 8 per cent per annum has been so limited and so modified that it is all but emasculated.
 

 While the section under which compromises have been sanctioned (Section 17) ■specifically provides that the interested parties may
 
 “settle
 
 all matters of compensation between themselves,” in the same section are also found the mandatory provisions that the
 
 settlement
 
 shall be reduced to writing, approved by the court, and
 
 “shall be substantially m accord with the •various provisions of this act
 
 * * {Italics ours.)
 

 In order to determine what was the intention of the legislators in incorporating Section 17 in the act, we must first examine the act as it was originally drawn. This section as it presently appears on our statute books is practically identical with the same section in the original act.
 

 In Act No. 20 of 1914 we find subsection 8 of Section 8, the paragraph authorizing the lump sum settlement, reading as follows: “The amounts payable periodically as compensation may be commuted to a lump sum payment at any time by agreement of the parties; subject to the approval of the Court and upon the payment of such lump sum, the liability of the employer making such payment under this act, shall be fully satisfied.”
 

 The provisions of this subsection were first changed by the amendment and reenactment o'f Section 8 in Act No. 38 of 1918, where it was provided that the amounts payable as compensation could be settled in a lump sum
 
 “if approved by the court as solely and clearly in the interest of the employee or his
 
 dependent” (italics ours), and for the first time it prohibited the discounting of the amount due the employee at an amount greater than 6 per cent per annum and provided further that if the provisions of the act were violated the employee or his dependents “shall be at all times entitled to demand and receive from the employer such additional payments as may be due under this act.”
 

 The same sub-section was again amended by Act No. 247 of 1920 where the provisions for the settlement are in the main substantially the same, with the exception that the penalty was changed to read as follows: “If such lump settlement be made without the approval of the Court, or at a discount greater than six per centum per annum, even if approved by the Court, the employer shall be liable for compensation at
 
 three
 
 times the rates fixed in this act, and the employee or his dependent shall, at all times within ten years after the' date of the payment of the lump sum settlement, and
 
 *940
 
 notwithstanding any other provisions of this act, be entitled to demand and receive in a lump sum from the employer such additional payment as together with the amount already paid will aggregate three times the compensation which would have been due under this act but for such lump sum settlement.” (Italics ours.)
 

 By Act No. 43 of 1922 the penalty was reduced from three times the amount due under the act to twice the amount and the rate of discount at which compensation could be made was increased from 6 per cent to 8 per cent. The time within which the employee or his dependents could exercise his rights was reduced from ten to five years. Otherwise paragraph
 
 8 is
 
 substantially the same as when amended by the act of 1920.
 

 ' By Act No. 216 of 1924 Section 8 was amended and reenacted, leaving subsection 8 thereof substantially the same as under the 1922 amendment.
 

 In the amendment and reenactment of this section by Act No. 85 of 1926, paragraph 8 was made paragraph 9 and it remained substantially the same, the only change made being to reduce the penalty from twice the amount due to one and a half times the amount fixed in the act and to limit the time within which the employee or his dependents could exercise his rights from five to two years.
 

 While the section was again amended and reenacted by Act No. 242 of 1928, paragraph 9 of Section 8 remained identically the same as amended in 1926.
 

 [5] In the light of the foregoing, as well as the history of the compensation law and the mischief sought to be remedied thereby, we are of the opinion that Section 17 was intended to fix the procedure which was to< be followed in making settlements under the; act when there was no dispute or disagreement between the parties and was intended-! to complement subsection 8 of Section 8. (now'subsection 9), which merely made provision for lump sum settlements without, prescribing the procedure. We are fortified’ in this view because the section immediately following (Section 18) provides the procedure to be followed in cases where there is. a
 
 dispute
 
 or
 
 disagreement
 
 between the parties.
 

 [6] Matters relative to compensation, claims being governed exclusively by the-provisions of the workmen’s compensation-, act, as amended, are sui juris; consequently,, any settlements made in contravention of’ the statute or the policy thereof are unenforceable and may be set aside. 15 > Corpus Juris Secundum, Compromise and. Settlement, p. 760, § 38. See, also, Articles 1764, 1892, and 1963 of the Revised Civil, Code.
 

 [7] Compromises are not provided for-in any of the
 
 various
 
 provisions of the act- and there is no room for them with respect to the mandatory provisions of the act, consequently they should not be sanctioned except where the letter or spirit of the law justifies them. For an example, where there is a serious and bona fide dispute as-to the employer’s liability under the act.
 

 [8] It necessarily follows that a settlement, such as was made in this case under ■ the guise of a compromise, at a greater discount than 8 per cent per annum is not in.
 
 *942
 
 •accord with the provisions of the act and is not binding. The defendant company is therefore not protected and is liable for ■compensation at the rate of “one and one-half times the rate fixed in this Act, and the ■employee
 
 * * * shall
 
 * * * be entitled to demand and receive in a lump sum from the employer such additional payment as together with the amount already paid will aggregate one and one-half times the ■compensation which would have been due under this Act, but for such lump sum settlement. * * *” Subsection 8 of Section ■8 of Act No. 20 of 1914, as amended. See, also, Fluitt v. New Orleans, T. & M. R. Co., 187 La. 87, 174 So. 163; and Taylor v. Lock, Moore & Co., Ltd., 164 La. 577, 114 So. 163.
 

 It is argued in tins case, however, that the plaintiff has failed to show that his disability is traceable to the original injury sustained by him while in the employ of the defendant. There is some suggestion that his disability is the result of another injury .subsequently sustained when he slipped and fell on the premises of his employer some six months after the compromise and injured his arm, or that it is due to what one of the doctors described as a general degenerative process. A review of the testimony of all of the medical experts shows that there remained around the fracture sustained by Puchner in his right hip an excess callous condition which operated as a functional limitation. This callous would ordinarily be absorbed by a young and healthy person, but to a person of Puchner’s age and organic condition, this would not improve. Consequently, the plaintiff is totally permanently disabled, as was found to be the case by both the trial and appellate courts.
 

 We realize that there is jurisprudence by the Courts of Appeal of this state in several cases where the contrary result has been reached, but it is our opinion that the decisions in these cases are contrary to the letter and spirit of the compensation law, and in so far as they conflict with the views herein expressed, they are hereby overruled.
 

 The plaintiff according to the evidence was entitled to receive the- maximum of $20 per week compensation, exclusive of the mandatory penalty and therefore, with it, $30 per week.
 

 For the reasons assigned the judgments of the district and appellate courts are annulled and set aside and it is now ordered and adjudged that there be judgment in favor of the plaintiff, Otto Puchner, and against the defendant, The Employers’ Liability Assurance Corporation, Ltd., decreeing that the defendant pay to the plaintiff in a lump sum an amount to be computed at $30 a week for a period of 400 weeks, with legal interest on each weekly installment as it should have been paid, less a credit of $1,480 previously paid by the defendant to the plaintiff; the defendant to pay all costs.
 

 ODOM, J., dissents, being of the opinion that the opinion and decree of Court of Appeal are correct.