In this suit, plaintiff seeks to set aside the proceedings and judgment whereby he compromised his claim for compensation with his employer and to recover compensation for total and permanent disability, plus a penalty of 50% to be paid in a lump sum, *Page 500 
with legal interest, less the amount previously paid him. He alleges that his disability is due to an accident suffered on or about May 13, 1940, arising out of his employment which caused a recurrence of both a right and a left inguinal hernia. His demand was rejected. He has appealed.
In October, 1939, plaintiff applied for work with the defendant company, but his application was rejected because the examination of plaintiff by defendant's physician revealed that plaintiff had a left inguinal hernia and a relaxation of the right inguinal ring.
In November, 1939, Dr. Tom Spec Jones, a reputable surgeon of the City of Baton Rouge and of plaintiff's own choosing, operated on the plaintiff for a bilateral direct inguinal hernia, and, after a period of recuperation, he pronounced the operation a success and gave plaintiff a certificate to go to work. On or about February 27, 1940, plaintiff again applied for work with the defendant company, and, after examination by defendant's physician, was accepted and employed as a welder.
On May 13, 1940, plaintiff, claiming that he had sustained an accident, while in the scope and course of his employment, engaged in manipulating a crank to an engine, by being struck on the right side by the crank, reported to the company physician and also to Dr. Jones, who both advised him that he had had a recurrence of the hernia on the right side.
During the latter part of May, 1940, or a week or so after the alleged accident, Dr. Jones performed another operation on the right side in an attempt to correct the hernia. Plaintiff was confined to the hospital for about sixteen days and was then sent to his home at Clinton, where he remained in bed about three weeks, and then around the house for another two or three weeks. However, he did no manual labor thereafter. About a month after the second operation on the right side, the doctor suspected a possible weakness in the wall on the left side and recommended that the plaintiff wear an abdominal belt, and which he did. Prior to this time, there had been no indication of a recurrence on the left side. On September 25, 1940, it was definitely established that plaintiff had had a recurrence of the hernia on the left side. However, on September 25, 1940, it appeared that good results from the operation on the right side had been obtained and the right side seemed intact.
It appears that compensation was paid to the plaintiff for the period from May 16, 1940, to November 1, 1940, defendant contending, however, that it never admitted liability and that this payment of compensation was made merely from a humanitarian standpoint.
On January 9, 1941, plaintiff filed suit against the defendant alleging that he sustained a permanent injury as a result of his alleged accident of May 14, 1940, and further alleging that at the time of the said accident, he was attempting to manipulate a heavy crank requiring great physical exertion and straining, and that in the act of so doing he felt a sudden pain and relaxation in the left (right) inguinal ring accompanied by nausea, and praying for workman's compensation for total, permanent disability, less a credit for the compensation heretofore paid. At that time, he was represented by Honorable Fred G. Benton and Honorable Carlos G. Spaht, very able and experienced counsel in workmen's compensation matters. Before the defendant filed its answer or any pleadings, it appears that the plaintiff, together with his counsel, approached the counsel for defendant with the view of making a compromise settlement. It further appears that plaintiff's counsel desired a settlement of $2500, but on the suggestion of plaintiff himself, the amount was reduced to $1900, plus compensation already paid. Consequently a joint petition and a written agreement of settlement were drawn up, the joint petition reciting that there was a bona fide dispute between the plaintiff and the defendant in that the plaintiff contended that he had sustained an accident resulting in the recurrence of a double inguinal hernia causing permanent and total disability, and the defendant denied the accident or the disability. In the settlement agreement, after setting forth the contention of plaintiff, the alleged accident was described as having occurred "when Breitung (plaintiff) attempted to crank a gasoline electric welding machine, at which time the handle of said machine kicked back slightly, striking Breitung's right side". The defendant denied that plaintiff was suffering from any disability resulting from an accident while in its employ, and that his disability, if any, is attributable to causes in any way connected with his employment with defendant. The joint petition and the compromise agreement were fully explained to the plaintiff and he was fully advised of the legal effects thereof by his counsel, and thereafter they were *Page 501 
submitted to the Court, in the presence of the plaintiff, for approval, and the Court, after interrogating plaintiff and again advising him of the legal effects thereof, approved the settlement agreement, and as a result plaintiff was paid the further sum of $1900 in cash, in full and final settlement of his claim, and signed a receipt in accordance therewith.
In July, 1941, plaintiff was again operated for hernia, this time by Dr. W.H. Cook, who operated on both sides. It appears that after this operation there was a recurrence of the hernia on the right side and that plaintiff was disabled by this hernia in spite of the fact that he had performed no labor whatsoever since May 13, 1940, the date of his alleged accident.
On December 19, 1941, the plaintiff filed the present suit against the defendant making practically the same allegations as contained in the suit he had filed on January 9, 1941, and further alleging that the said suit had been compromised by a joint petition and settlement agreement, when there was no difference and dispute between himself and defendant and that the said compromise agreement was an attempt to settle his disability claim at a discount of more than 8% per annum, contrary to the Statute, Act No. 20 of 1914, as amended, and praying for a judgment for total and permanent disability, plus a penalty of 50%, to be paid in a lump sum, less the amount of $2585.17 previously paid, and for the further sum of $250 for medical and hospital expenses.
In defense of the suit, defendant contends that the settlement made with the plaintiff was in every respect legal and binding and in accordance with the provisions of the Workmen's Compensation Law. In the alternative, defendant makes other contentions which need not be mentioned due to the conclusions we have reached.
This case is one of the cases brought about by the decision of the Supreme Court in Puchner v. Employers' Liability Assurance Corporation, 198 La. 921, 5 So.2d 288. Under that decision, we have to look upon the judgment sought to be set aside as one approving a lump sum payment of compensation which can be set aside if the payment made is at a greater discount than eight per centum, except where there is a serious and bona fide dispute as to the employer's liability under the act, such as was held in the case of Musick v. Central Carbon Company, 166 La. 355,117 So. 277.
Realizing the exception provided for in the Puchner decision, no doubt, counsel for the plaintiff inserted an allegation in his petition that there was no difference and dispute between plaintiff and defendant at the time of making the settlement and that all the statements contained in the joint petition and the annexed agreement of settlement presented to the court were made in an attempt to show such a dispute where none existed in fact.
The only question before the court is to determine whether or not there was, at the time the settlement agreement was entered into, a serious bona fide dispute as to the employer's liability.
Besides the facts previously stated, we find that there was, from the very beginning, a serious dispute between the plaintiff and the defendant as to the happening of the accident, and, even admitting the accident, there was a serious dispute as to causal relationship between the accident and the recurrence of the hernias on the right and left sides.
The only evidence as to the actual happening of the accident is the testimony of plaintiff to the effect that while manipulating the crank of an engine, the crank struck him on the right side. His testimony is not in accordance with his pleadings in the two cases filed by him, but is in conformity with his contention in the settlement agreement. In other words, his allegations in the two suits were allegations clearly showing great physical exertion and straining, sudden pain and a relaxation in the right inguinal ring, accompanied by nausea, indicating a strain from within, the usual cause and symptoms of a hernia, while his testimony would show an outward blow, not usually followed by a hernia. The defendant therefore rightfully contends that it had serious doubt, at that time, that plaintiff had had an accident, especially in view of the testimony of Dr. Jones to the effect that from his treatment of plaintiff he is of the opinion that plaintiff had a congenital predisposition to hernia, made more so by the weakening of his abdominal wall by some injectment treatment prior to November, 1939, and that plaintiff did not need to sustain any accident to have a recurrence of the hernia.
As to the causal connection between the alleged accident and the resultant disability, we have the positive and direct testimony of Dr. Jones, the doctor who operated on the plaintiff prior to the alleged accident and again after the alleged accident, to the effect *Page 502 
that hernias are produced by an inward force and not an outward force, and that the alleged accident did not necessarily produce the recurrence of the hernia on either side, or aggravate plaintiff's weakened condition. In that connection, it will be noted that in spite of the second corrective hernia operation by Dr. Jones and the subsequent corrective hernia operation by Dr. Cook, the plaintiff again suffered a recurrence of the hernia on the right side, said corrective operations not lasting more than six months at any time, even though he had performed no labor subsequent to the second operation by Dr. Jones. Plaintiff refers us to the testimony of Dr. Cook as showing that there was a causal connection between the alleged accident and the recurrence of the hernia. The testimony of the doctor is based on a false premise in that the hypothetical question propounded to the doctor was based on facts as alleged by the plaintiff and not on the facts as testified to by him and the other such facts as contained in the record.
Plaintiff, in his brief, admits that in order for the plaintiff to recover, it must be shown that there is a causal connection between the accident and his disability. In our opinion he has failed to do so. Such was also the conclusion of the trial judge.
However, the facts of this case show that there were substantial differences between the parties and a rather serious dispute that plaintiff's disability resulted from the accident which he says that he sustained. Moreover, plaintiff was represented by very able and competent counsel, particularly well versed in the Compensation Law of Louisiana, who would not have advised plaintiff to accept the settlement unless there had been a serious dispute as to plaintiff's right to recover compensation for total and permanent disability.
This is not a case where an employer takes advantage of the employee and makes a settlement while still paying compensation. Compensation payment had ceased for over two months before suit was filed, and another two months elapsed before a final agreement of settlement was reached between counsel for both parties, and in the language of the Supreme Court in the Musick case, supra, and approved in the Puchner case, supra [198 La. 921, 5 So.2d 293]: "It was a substantial settlement, and one that cannot be said to be out of accord with the statute."
For these reasons, the judgment under review is affirmed.