50 So.2d 484 (1951)
FONTENOT
v.
GOLDENSTERN PIPE & SUPPLY CO. et al.
No. 3310.
Court of Appeal of Louisiana, First Circuit.
February 8, 1951.
*485 Seth Lewis, Opelousas, E. Herman Guillory, Ville Platte, for appellant.
Tate & Fusilier, Ville Platte, for appellee.
LOTTINGER, Judge.
On January 23, 1947, the plaintiff in this suit, Shearn Fontenot, was employed by the defendant, Goldenstern Pipe and Supply Company. Plaintiff, who was cutting stakes to mark a pipe line, in swinging his axe hit some overhanging branches which deflected the axe causing him to cut his left foot near the ankle joint. He was given first aid in Eunice, Louisiana, and later placed himself under Dr. Arthur Vidrine of Ville Platte, Louisiana.
The Standard Accident Insurance Company of Detroit, Michigan, the other defendant herein and compensation insurer of plaintiff's employer, began paying compensation soon thereafter at the maximum rate, and these payments continued until July 2, 1947, a period of twenty-three weeks, when a report was received by the insurer's adjuster from Dr. Vidrine that plaintiff had been discharged by him as being able to resume light work. On August 11, 1947, plaintiff had a letter written to the insurer demanding further compensation. Later he went to the office of the adjuster in Baton Rouge, and on August 20, 1947, at the request of the adjuster, submitted to an examination by Dr. George, an orthopedic surgeon.
Subsequent to the examination on offer was made to plaintiff by the adjuster in the sum of $150.00 in full settlement of all claims. This amount was later increased to $250.00 and judicial proceedings were instituted in the lower court to effect the settlement. An attorney was appointed by the trial judge to represent plaintiff and on September 5, 1947, judgment was rendered approving the settlement in the sum of $250.00
The present action was instituted by plaintiff against the same defendants named above, on May 27, 1949. In his petition *486 plaintiff alleges that the settlement referred to above was a lump sum settlement and that he is entitled to have same set aside and annulled because of it having been discounted at a rate greater than 8% per annum, in contravention of the applicable section of our Workmen's Compensation Law, now LSA-RS 23:1274. In the alternative he avers that even if the settlement was a compromise that it should be annulled because: (a) there was no bona fide dispute, (b) the defendants did not verify the petition and (c) his consent thereto was induced by fraud and misrepresentations on the part of the defendants.
The defendants, after filing a plea of res adjudicata which was referred to the merits, filed an answer in which they denied any fraud or misrepresentation and claimed that the settlement was a valid compromise. After trial on the merits the lower court found the agreement to have been a lump sum settlement at a discount greater than 8%, and accordingly annulled the previous judgment. The lower court also found the plaintiff to be permanently and totally disabled and rendered judgment as prayed for, except that it denied the penalty provided in LSA-RS 23:1274. From this judgment both parties have appealed, the defendants asking for a reversal and the plaintiff asking that compensation be awarded at one and one-half times that which would have been due, as provided in the above mentioned section of the statute.
The initial question for determination, therefore, is the correctness of the trial judge's findings relative to the type of settlement which was entered into between the parties. The trial judge fully analyzed the facts in this case and we adopt his opinion, which is as follows:
"This is a suit by an injured employee to recover additional compensation and penalty payments under the Louisiana Compensation Act and to set aside a compromise or lump sum settlement previously executed.
"The plaintiff, Shearn M. Fontenot, suffered an injury on January 23, 1947, while employed by defendant, Goldenstern Pipe & Supply Co., the compensation insurer of which is co-defendant, Standard Accident Insurance Company of Detroit, Michigan.
"He was treated and paid compensation up until July 2, 1947, only, when he was discharged by Dr. Arthur Vidrine of Ville Platte, Louisiana, as ready for `light duty'.
"On September 5, 1947, a lump sum settlement or a compromise was presented to the trial Court for approval in the amount of Two Hundred Fifty and No/100 ($250.00) Dollars. Attached to and made a part of this settlement was a report by Dr. I. L. George, orthopedist, indicating a minimum period of partial total disability for six months.
"Plaintiff testified that he attempted to go back to work, but that due to the injury to his left foot he was unable to work without pain or to work efficiently. He attempted again to work in the fall of 1949 at an occasional job with the same results.
"In March, 1948, plaintiff broke his left leg about two-thirds from the top, and after considerable and successful treatments was discharged as completely cured insofar as this second fracture was concerned.
"Suit was filed in May, 1949, for the additional compensation and penalties. The first and main issue in this case is whether the settlement of September 5, 1947, is a compromise or a lump sum settlement. If it is a compromise and there is no fraud alleged and proved to set it aside, plaintiff's suit must be dismissed. On the other hand, if it is a lump sum settlement and it was discounted at a rate greater than eight (8) per cent, the said lump sum settlement can be disregarded by this court.
"This court is of the opinion that the alleged settlement is not a `compromise' as defined by the Workmen's Compensation Act, but is a lump sum settlement.
"Section 8(9) and 17 of the Louisiana Compensation Act is as follows:"
"Lump sum settlements"
"Section 8(9). The amounts payable as compensation may be commuted to a lump sum settlement by agreement of the parties *487 after having been approved by the court as reasonably complying with the provisions of this act; provided, that in making such lump sum settlement, the payments due the employee or his dependents, under this act, shall not be discounted at a rate greater than eight per centum per annum; if such lump sum settlement be made without the approval of the court, or at a discount greater than eight per centum per annum, even if approved by the court, the employer shall be liable for compensation at one and one-half times the rate fixed in this act, and the employee or his dependants shall, at all times within two years after date of the payment of the lump settlement and notwithstanding any other provisions of this act, be entitled to demand and receive in a lump sum from the employer such additional payment as together with the amount already paid will aggregate one and onehalf times the compensation which would have been due under this act, but for such lump sum settlement. But upon the payment of a lump sum settlement commuted on a term agreed upon by the parties, discounted at not more than eight per centum per annum and with the approval of the court, the liability under this act of the employer making such payment shall be fully satisfied; provided, that for injuries scheduled in paragraphs 1-d and 2 of this section, no shorter term than therein set forth have been agreed upon." (Dart's 4398(9). Section 8 of Act No. 20 of 1914 as amended [LSA-RS 23:1274].) (Italics by Trial Court.)
"Bona fide disputes may be compromised and settledApproval by courtAttorney. Whenever a bona fide dispute exists between the employee or his dependants on the one hand, and the employer or his insurer on the other, as to liability or coverage under the act, whether the injuries complained of are compensable, the existence, nature, extent or duration of the injury or disability involved, the amount of compensation due the injured employee, or his dependants, or any other matter or thing affecting the right of the employee or his dependants to recover compensation under this act, the interested parties shall have the right to compromise and settle such bona fide dispute, including the manner in which compensation is to be paid, by agreement to be approved by the Court having competent jurisdiction.
"The agreement entered into between the employee or his dependants and the employer or his insurer, shall be presented to the Court for its approval upon a joint petition verified by all parties thereto. The Judge to whom the petition is presented shall, in every case, discuss the settlement and its terms with the employee or his dependants. When the employee or his dependants are not represented by a lawyer the Judge shall appoint one to advise said parties relative to the proposed compromise settlement. A reasonable fee for such services shall be fixed by the Court and when taxed as costs it shall not exceed the sum of fifteen dollars. The Judge shall require such proof of the dispute between the parties, and of the other facts set out in the joint petition as he thinks proper.
"If the Court, in its discretion, believes the compromise agreed upon to be fair and equitable, and that it was entered into primarily to avoid or to end litigation, it shall approve said compromise, and immediately enter it as the judgment of court, and said judgment shall not thereafter be set aside except for fraud or misrepresentation made or induced by the employer or its insurer. The Judge may, however, refuse to approve said settlement if he does not believe that it does substantial justice to the parties." (Dart's 4407 Section 17, Act No. 20 of 1914 as amended particularly by Act 96 of 1942 [LSA-RS 23:1271 to 23:1273].)" (Italics by Trial Court.)
"There is an abundance of jurisprudence distinguishing and interpreting the lump sum settlement and the compromise provisions of the Compensation Act.
"In the main, the lump sum settlement provisions of Section 8 are applicable where there is no bona fide dispute, and provide for a lump sum settlement providing the employee's compensation is not commuted at a rate greater than eight per cent per annum.
*488 "The compromise provisions of Section 17 are available only where there is a bona fide dispute and "primarily to avoid or to end litigation".
"Both lump sum settlement and compromise must receive court approval, and both must comply strictly with the requirements of the statute.
"Incorporated in this proceeding of August 20, 1947, was a medical report dated August 20, 1947, by Dr. I. L. George of Baton Rouge, an orthopedic surgeon, stating:
"Fontenot states that he is able to walk normally and without a limp except when he may step on uneven ground or on a pebble at which time it gives him pain * * *. On X-Ray it is found that the navicular was probably barely touched by the axe, but the astralagus has a small piece of bone approximately ¾ inch in length cut loose and projecting medially. This apparently is forming a bony block and has considerable to do with preventing the motion of inversion of the foot * * *. If, however, after six months to a year he continues to have trouble it would be well to excise the small spicule of bone. At the present time he can do most any type of work such as electric welding, sheet metal work or any of the occupations which do not require climbing or being on his foot constantly and all day long. I do not feel that rough necking on a drill-rig would be good for him because it requires considerable agility and sureness of footing."
"Since the plaintiff, at the time of the accident, had been engaged in an occupation which involved being on his foot all day long and walking on uneven ground, climbing in and out of ditches, etc., it is apparent that the compensation proceedings themselves indicate that there is no serious bona fide dispute as to the fact as that for a minimum period of six months to a year the plaintiff would be totally disabled from doing the work in which he was engaged at the time of the accident.
"The medical testimony indicates conclusively that the plaintiff would be permanently disabled for an additional six months from the date of the report of Dr. I. L. George quoted herein above.
"It necessarily follows that there was no dispute between plaintiff and defendants at the time of the settlement that for a period of at least six months the plaintiff would be disabled from doing the work in which he was engaged at the time of the injury.
"The plaintiff was paid compensation through July 2, 1947, or for twenty-three weeks at $20.00 per week; that although plaintiff was still disabled between July 2nd and September 5th no further compensation was paid; that therefore at the time of settlement, he was owed $180.00 in back compensation and therefore the net sum received in settlement by him was $70.00. Reid v. J. P. Florio [& Co., La. App.], 172 So. 572 at 577 held that back compensation must be subtracted from the lump sum settlement.
"The sum of at least $520.00 more compensation was due, and whereas the defendants paid plaintiff only $70.00 it is evident that the lump sum settlement was discounted at a greater rate than 8%, contrary to the statute.
"Note the language of the court in Fluitt v. New Orleans [T. & M. R. Co.], 187 La. 87, 174 So. [163], 166, 174:"
"In interpreting these two parts of the Compensation Law, this court has held that, where there is a serious dispute between the claimant and the employer and a substantial compromise settlement is made with the approval of the court, section 17 of the act governs, and the payment of the amount agreed upon satisfies the judgment of the court approving the compromise and binds the claimant. If there is no serious dispute between the parties and a settlement is made, or if the settlement is made without the approval of the court, or if made with the approval of the court at a greater rate of discount than 8 per cent., where there is no serious dispute, then it is a lump-sum settlement in violation of subsection 9 and the release does not protect the employer. Young v. Glynn, 171 La. 371, 131 So. 51, and Musick v. Central Carbon Company, 166 La. 355, 117 So. 277." (Italics by Trial Court.)
*489 Further, as stated in Childers v. [Roy O.] Martin Lumber Co. [La.App.], 171 So. 484, at [page] 485: "Lump-sum settlements are authorized by the Workmen's Compensation Law (Act No. 242 of 1928, p. 362, § 8, subd. 9). Discount in such is limited to 8 per cent. The law is imperative in this respect. If less than the full amount due an injured employee is accepted by him, in error or otherwise, he is not bound by his acceptance. He may successfully assail his own action if timely begun." 171 So. 485. (Italics by Trial Court.)
"The court reviewed and studied carefully all of the authorities submitted by plaintiff and defendants, and it has come to the conclusion that the settlement was not a compromise but a lump sum settlement.
"Inasmuch as the court has held that the settlement agreement is a lump sum settlement and not a compromise, it is not necessary for the court to consider the alternate plea which is an attack on the instrument on grounds of fraud and misrepresentation. However, in justice to all parties concerned it might be well for the trial court to state its appreciation of the facts concerning the alternate plea in the event that the matter goes to the appellate courts.
"The court does not believe that the testimony adduced on the trial shows any proof of the allegations of fraud in the petition. The court does not believe that the adjuster designedly took advantage of the plaintiff any more than the plaintiff cunningly took advantage of the adjuster. They were both in good faith and under the holding of the Puchsner [Puchner] v. Employers' Liability Assurance Corporation case [198 La. 921], 5 So.2d 288, I will refrain from applying the penalties prayed for.
"On the question of disability plaintiff testified that when he walks on uneven ground, steps on a pedal or is on his feet all day long, his foot hurts and that he is unable to do such work hour after hour in that when his ankle turns it pains him. This testimony is corroborated by those who worked with him both before and after the second accident. The medical testimony, with the exception of Dr. Simon, agreed that if the plaintiff is telling the truth, that there is pain under the circumstances outlined, there is no doubt at all that there is present a disfunction of his left foot by reason of a limited inversion, or to put differently, a loss of the turning movements of the heel. All of the doctors agreed that there is some permanent disability although the percentages differ.
"There is a strong contention by defendants that when the plaintiff fell on a skating rink and broke his leg some months after the first injury, and a treatment for the broken leg at the Veterans Hospital in Alexandria, Louisiana, might have had something to do with aggravating the previous injury. All expert medical testimony in this record by preponderance convinces the trial court that the broken leg and the treatment thereof, which was very successful, did not affect or in any way aggravate the first injury.
"The court therefore considers that the plaintiff cannot do the work in which he was engaged at the time of the accident, but regardless of any work that he does, because of the pain which he experiences.
"It is therefore ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Shearn M. Fontenot, and against the defendants, Goldenstern Pipe & Supply Company and Standard Accident Insurance Company, for compensation at the rate of twenty and no/100 ($20.00) dollars per week for four hundred weeks from date of the injury to the plaintiff, less compensation already paid, plus judicial interest from date of demand until paid, and all costs of this suit, including all of the experts' fees."
We agree with the lower court that there was no serious dispute between the claimant and the employer and likewise agree with the lower court that the settlement was not a compromise but a lump sum settlement and discounted at a greater rate than eight per cent.
We likewise agree with the lower court that this plaintiff is entitled to permanent total disability and is entitled to compensation not beyond 400 weeks.
*490 Dr. Reed A. Fontenot, testifying on behalf of plaintiff, stated that the claimant had some difficulty and discomfort in standing considerably or in walking over rough terrain, and that he would have discomfort in doing heavy work. He further stated that in his opinion he thought claimant's disability would be permanent.
Dr. Arthur Vidrine, testifying on behalf of plaintiff, stated that claimant had some permanent disability and discomfort and pain while walking on uneven ground. He stated that claimant may be able to do some labor work, but not that which would require him to be on his feet for a long period of time and especially with heavy weight bearing. He stated further that the claimant could not do work requiring standing and carrying weight as efficiently as before the injury.
Dr. Guy A. Caldwell and Dr. Harry Morris, both orthopedic surgeons, stated that the up and down movement in the ankle joint of claimant's left foot was free and that the twisting movement of the forepart of the foot was free and that the patient was able to walk with a normal gait, but the side-turning movements at the heel were completely stopped. They both stated that the loss of the turning movements of the heel makes it more difficult for a person's foot to accomodate itself to uneven surfaces, but in walking on plain smooth surfaces, it should not be noticed, and in simple standing it should not be noticed. They both stated that this condition in claimant's foot would bring about fatigue and some aching pain in the ankle joint, while doing heavy work or walking over rough or uneven surfaces. They also thought the disfunction of claimant's left foot to be permanent.
Dr. S. Theodore Simon, an orthopedic surgeon, stated that plaintiff had about a ten to a fifteen per cent loss of the use of the foot and leg, but that in his opinion this would not prevent plaintiff from returning to his occupation of laborer. He further stated that this disfunction or limitation in motion could or could not produce pain or disability to walk or do labor work, but stated that in his opinion this patient did not have any particular discomfort. He further stated that he found nothing that would produce pain in claimant's foot. He stated, nevertheless, that the disfunction he found in plaintiff would likely be permanent.
Since the plaintiff at the time of the accident had been engaged in an occupation which involved being on his foot all day long and walking on uneven ground, climbing in and out of ditches, etc., it is apparent that he is disabled from carrying on the same or similar description, kind or character of work when injured, as we find from the medical testimony that this claimant experiences pain and discomfort in standing or walking on uneven ground.
We note in the case of Hibbard v. Blane, 183 So. 39, where the Court of Appeal of the Second Circuit granted an injured carpenter, permanent total disability because of the fact that the carpenter could not carry on his duties as such on uneven or rough surfaces, for in such instances his foot would turn and cause pain. We do not see how a laborer can be called upon to choose his jobs so that he will only be required to work on even surfaces and for that reason we agree with the lower court that this claimant is entitled to permanent total disability.
For the above and foregoing reasons, the judgment of the lower court is affirmed.
Judgment affirmed.