894 So.2d 1096 (2005)
Ronald K. TRAHAN
v.
COCA COLA BOTTLING COMPANY UNITED, INC.
No. 2004-C-0100.
Supreme Court of Louisiana.
March 2, 2005.
*1099 Walsh & Bailey, Brian Keith Abels, Baton Rouge, for Applicant.
Glenn Armentor Law Corp., Lafayette, Harry Karl Burdette, Baton Rouge, for Respondent.
KIMBALL, Justice.
We granted certiorari in this case to consider several issues: (1) whether a partial settlement of a workers' compensation claim is governed by the provisions of La. R.S. 23:1272; (2) whether a valid and enforceable compromise established by recitation in open court is a final, non-appealable judgment for purposes of penalties and attorney fees pursuant to La. R.S. 23:1201(G); and (3) whether such a compromise is an award such that claimant is entitled to file a certified copy of the transcript into the mortgage records pursuant to La. R.S. 23:1201.3. For the reasons expressed herein, we conclude that an agreement to settle a workers' compensation claim that does not involve a lump sum payment or compromise settlement in exchange for full and final discharge and release of the employer and/or his insurer from liability under the Workers' Compensation Act is not governed by La. R.S. 23:1272. Furthermore, we conclude that claimant is entitled to penalties and attorney fees for defendant's failure to timely pay the award payable under the terms of a final, non-appealable judgment and that claimant is entitled to file a certified copy of the transcript into the mortgage records.

FACTS AND PROCEDURAL HISTORY
On August 10, 1998, Ronald K. Trahan ("claimant") was injured in the course and scope of his employment with Coca Cola Bottling Company United, Inc. ("defendant"). On October 19, 2000, claimant filed a Disputed Claim for Compensation against defendant for benefits under the *1100 Workers' Compensation Act. Trial on the matter began on July 31, 2002, and was continued to October 21, 2002. At the continuation of trial on October 21, 2002, the following exchange occurred on the record:
THE COURT: Gentlemen, this matter comes before the Court on the trial on merits; however, I understand that a resolution has been met; is that correct?
[Claimant's attorney]: Yes, Your Honor.
[Defendant's attorney]: That's correct, Your Honor.
THE COURT: Would you like to enter terms and conditions of any settlement on the record?
[Defendant's attorney]: I will, Your Honor.
Your Honor, my client has agreed to pay the following sums to Mr. Trahan at this point. We'll pay the total sum of $27,500. We're also agreeing that if there are some co-payments that he has made from Ardoin Drugs that we will reimburse him those. We will be responsible for any medical bills that have been  that are unpaid that are related to the incident in accordance with the schedule. Those will be paid to the respective providers in that instance whenever there are bills like that. We don't know exactly if there are any, and if there are, what they are.
Mr. Trahan has reserved rights to future compensation, future claims hereafter. Mr. Trahan, I believe, will also state on the record that he is unaware of any outstanding medical bills that have not been paid other than those that were discussed at the first part of this trial in July.
THE COURT: [Claimant's attorney]?
[Claimant's attorney]: Judge, I agree. And like he said, he's not waiving any rights to future comp, whether that be weekly and medicals. Those will continue.
And also that you have to set the attorney fee, Judge, because this was  the majority of the issues in this case were penalty issues.
THE COURT: The attorney fee is set at $5,000.
[Defendant's attorney]: Just so we're clear, Your Honor, my client is not agreeing to pay that in addition to what we've agreed to pay.
THE COURT: That's correct.
[Defendant's attorney]: I just want to make sure that's clear on the record.
And we would ask that Mr. Trahan represent to the Court as we've stated, Your Honor, that there are no outstanding medicals that he is aware of other than what was presented at the first part of this trial.
THE COURT: Is that correct, Mr. Trahan?
MR. TRAHAN: Trahan yes, ma'am.
THE COURT: So ordered.
Is there anything further to come before the Court in this matter, gentlemen?
[Defendant's attorney]: No, Your Honor.
[Claimant's attorney]: No, Your Honor.
THE COURT: Thank you very much. The Court accepts and approves the settlement as presented, and I will sign off on documents once they're presented.
[Defendant's attorney]: Do we doa  we'll do a dismissal without prejudice at this point?
[Claimant's attorney]: Yeah, we can.
[Defendant's attorney]: Thank you, Your Honor.
THE COURT: Thank you, gentlemen.
Three days later, on October 24, 2002, defense counsel sent claimant's counsel a check in the amount of $27,500.00, along *1101 with a receipt and release, and a motion to dismiss without prejudice. Defense counsel instructed claimant's counsel not to cash the check until the receipt and release and motion to dismiss were signed and returned. On November 12, 2002, claimant's counsel sent a letter to defendant's counsel stating that he was unsure whether the receipt and release accurately reflected their stipulation and requesting that defense counsel obtain a copy of the transcript. Additionally, claimant's attorney stated he would like to negotiate the settlement check since an enforceable agreement was reached on the record and a receipt and release was not necessary.
Defendant's attorney responded on November 16, 2002, and requested that claimant's counsel advise him of his objections to the receipt and release and the motion to dismiss. On November 20, 2002, claimant's attorney proposed a revised motion to dismiss and informed defendant's counsel that he would not sign the receipt and release as the terms were dictated into the record. The parties continued to correspond, with claimant's counsel repeatedly asking for permission to negotiate the check, but a satisfactory conclusion was not reached.
On December 27, 2002, claimant filed a Motion and Order for Penalties and Attorney's Fees, alleging judgment was rendered on October 21, 2002, and that defendant would not allow him to negotiate the settlement check in payment of the judgment unless he executed the receipt and release. Claimant asserted he was therefore entitled to penalties and attorney fees pursuant to La. R.S. 23:1201(G). At the conclusion of a hearing on the motion, which was held on February 17, 2003, judgment was rendered in favor of claimant. The workers' compensation hearing officer found that a binding settlement was entered into when the court approved the settlement as recited and acknowledged in open court on October 21, 2002. The hearing officer found that defendant was then obligated to unconditionally tender payment of the judgment and, because it did not tender payment unconditionally within thirty days, claimant was entitled to a 24% penalty, as well as attorney fees in the amount of $2,500.00.
On March 17, 2003, claimant filed a Motion and Order to File Judgment into the Mortgage Records of the District Court based on the provisions of La. R.S. 23:1201.3. On that same date, the hearing officer ordered that the October 21, 2002, transcript be certified in accordance with La. R.S. 23:1201.3 and returned to claimant's counsel for recording purposes.
Defendant appealed both judgments. The court of appeal affirmed, finding that the oral recitation of the agreement on October 21, 2002, in open court created a final and enforceable settlement pursuant to the provisions of La. R.S. 23:1272(A). Trahan v. Coca Cola Bottling Co. United, Inc., 03-827 (La.App. 3 Cir. 12/10/03), 861 So.2d 783. The court of appeal then concluded that the settlement was a final, non-appealable judgment for purposes of La. R.S. 23:1201(G). Consequently, it determined that because defendant did not authorize payment within thirty days, claimant was entitled to penalties and attorney fees. The court of appeal also found that the settlement was an award for purposes of La. R.S. 23:1201.3(A), and the hearing officer therefore did not err in granting claimant's motion to file the judgment into the mortgage records. Finally, the court of appeal granted claimant's request for additional attorney fees for work done on appeal and awarded an additional $2,500.00 in attorney fees.
This court granted certiorari to determine whether an enforceable compromise settlement was entered into on October 21, *1102 2002, whether the award of penalties and attorney fees was proper, and whether claimant's motion to file the judgment into the mortgage records was properly granted. Trahan v. Coca Cola Bottling Co. United, Inc., 04-0100 (La.4/8/04), 870 So.2d 260.

DISCUSSION
The first issue presented in this case is whether the parties entered into an enforceable compromise settlement in open court on October 21, 2002. The lower courts determined that a valid compromise agreement was established on that date pursuant to the provisions of La. R.S. 23:1272(A). Defendant, however, contends that the clear terms of La. R.S. 23:1272 make it inapplicable to the facts presented in the instant case. We agree with defendant's position in this regard.
The Workers' Compensation Act allows parties to settle or compromise claims in some instances. La. R.S. 23:1272(A) provides:
A. A lump sum or compromise settlement entered into by the parties under R.S. 23:1271 shall be presented to the workers' compensation judge for approval through a petition signed by all parties and verified by the employee or his dependent, or by recitation of the terms of the settlement and acknowledgment by the parties in open court which is capable of being transcribed from the record of the proceeding.
Interpretation of this statute begins, as it must, with the language of the statute itself. David v. Our Lady of the Lake Hosp., Inc., 02-2675, p. 11 (La.7/2/03), 849 So.2d 38, 46; Touchard v. Williams, 617 So.2d 885, 888 (La.1993). When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La. C.C. art. 9; La. R.S. 1:4. When the wording of a section of the revised statutes "is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La. R.S. 1:4. In interpreting the Workers' Compensation Act, courts must be mindful of the basic history and policy of the compensation movement, which includes the provision of social insurance to compensate victims of industrial accidents. Brown v. Adair, 02-2028, p. 5 (La.4/9/03), 846 So.2d 687, 690; Roberts v. Sewerage & Water Bd. of New Orleans, 92-2048, p. 7 (La.3/21/94), 634 So.2d 341, 345.
The wording of La. R.S. 23:1272 makes it clear that its provisions apply to "[a] lump sum or compromise settlement entered into by the parties under R.S. 23:1271."[1] Consequently, for the October 21, 2002, agreement to constitute a compromise settlement under La. R.S. 23:1272(A) such that a hearing officer's approval after "recitation of the terms of the settlement and acknowledgment by the parties in open court which is capable of being transcribed from the record of the proceeding" is sufficient for the making of *1103 an enforceable agreement, the provisions of La. R.S. 23:1271 must be satisfied.
La. R.S. 23:1271 provides:
A. It is stated policy for the administration of the workers' compensation system of this state that it is in the best interest of the injured worker to receive benefit payments on a periodic basis. A lump sum payment or compromise settlement in exchange for full and final discharge and release of the employer, his insurer, or both from liability under this Chapter shall be allowed only:
(1) Upon agreement between the parties, including the insurer's duty to obtain the employer's consent;
(2) When it can be demonstrated that a lump sum payment is clearly in the best interests of the parties; and
(3) Upon the expiration of six months after termination of temporary total disability. However, such expiration may be waived by consent of the parties.
B. As used in this Part, "parties" means the employee or his dependent and the employer or his insurer. Nothing in this Section shall require the office of risk management to obtain approval of settlements from the employing state agency, department, council, board, or political subdivision.[2]
This provision clearly and unambiguously sets forth Louisiana's policy for the administration of the workers' compensation system: that the best interest of the injured worker is served when he receives benefit payments on a periodic basis. Subsection (A) of the statute goes on to plainly state that a lump sum payment or compromise settlement in exchange for full and final discharge and release of the employer and/or his insurer from liability under the Workers' Compensation Act shall be allowed only if certain requirements are satisfied. La. R.S. 23:1271 clearly limits itself to an agreement for a lump sum payment or compromise settlement in exchange for an employer's or insurer's full and final *1104 discharge from liability under the Workers' Compensation Act.
In the instant case, there is no dispute that the agreement at issue was a partial settlement of past sums due claimant. Claimant reserved his rights to future compensation, including weekly and medical benefits. After the agreement was made, defendant was still liable for benefits due claimant pursuant to the Act that accrued after October 21, 2002. This was therefore not a lump sum payment or compromise settlement in exchange for full and final discharge and release of the employer and/or his insurer from liability under the Workers' Compensation Act. Consequently, this was not a lump sum or compromise settlement entered into by the parties under La. R.S. 23:1271, and the provisions of La. R.S. 23:1272 are inapplicable to this situation.
Claimant points out, however, that even if the parties did not enter into an enforceable compromise settlement pursuant to La. R.S. 23:1272, the provisions of La. C.C. art. 3071 apply to render this partial settlement valid, final and enforceable. We agree that the provisions of La. C.C. art. 3071 apply to this case.
Article 3071 provides:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
The first paragraph of La. C.C. art. 3071 provides for two elements of a compromise: (1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences. See Brown v. Drillers, Inc., 93-1019, p. 6 n. 8 (La.1/14/94), 630 So.2d 741, 747 n. 8. To be enforceable under Article 3071, a compromise must either be reduced to writing and signed by the parties or their agents, or be recited in open court and be capable of transcription from the record of the proceeding. Lavan v. Nowell, 98-0284, p. 2 (La.4/24/98), 708 So.2d 1052, 1052 (per curiam). The Article additionally provides that when the agreement is validly recited in open court, each party acquires the right of judicially enforcing the performance of the agreement even though its substance may later be written in a more convenient form.
This court has previously refused to apply the provisions of La. C.C. art. 3071 to cases involving lump sum settlements or compromises of workers' compensation claims. See, e.g., Colbert v. Louisiana State Univ. Dental Sch., 446 So.2d 1204 (La.1984); Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980); Puchner v. Employers' Liab. Assur. Corp., 198 La. 921, 5 So.2d 288 (1941) (on rehearing). These cases, however, involved lump sum settlements or compromises of workers' compensation claims that fit squarely under the provisions of the Workers' Compensation Act (as they existed at that time) governing such settlements or compromises. Additionally, the more general provisions of Article 3071 were in conflict with the specific procedures required for lump sum settlements or compromises of workers' compensation claims. Finally, the agreements sought to be enforced would have released the employer from all liability *1105 under the Workers' Compensation Act, thereby providing the injured worker with no further periodic payments.
Prior to August 15, 1999, a lump sum payment or compromise settlement in exchange for full and final discharge and release of the employer and/or his insurer from liability under the Workers' Compensation Act could be accomplished only by requesting approval from the workers' compensation hearing officer by presenting a petition signed by all the parties and verified by the employee or his dependent. Prior to approving the proposal, the hearing officer was required to ensure various other requirements were satisfied. Because of the specific procedural requirements provided by La. R.S. 23:1272, this court concluded that "the form provided in R.S. 23:1272 sets forth a mandatory and invariable guideline, which `creates an exception to other general statutory or jurisprudential rules of compromise and supersedes them in the area in which it is intended to operate.'" Colbert, 446 So.2d at 1206 (quoting Smith, 392 So.2d at 402). We reasoned, then, that the general rules of compromise and confession of judgment are inapplicable in workers' compensation cases. Id. Accordingly, we held that "unless the parties comply with the statutory requisite joint verified petition, an oral settlement in open court will not give either party the right to specific performance." Id.
By Act No. 776 of 1999, the legislature amended La. R.S. 23:1272(A) to allow a lump sum payment or compromise settlement in exchange for full and final discharge and release of the employer, his insurer, or both from liability under the Workers' Compensation Act to be approved by the workers' compensation hearing officer "by recitation of the terms of the settlement and acknowledgment by the parties in open court which is capable of being transcribed from the record of the proceeding." This amendment served to allow the possibility of oral settlements in open court in workers' compensation proceedings and is similar, though not identical, to the provisions of La. C.C. art. 3071. The fact that the amendment and Article 3071 contain similar provisions was apparently recognized by legislators during the House committee meeting at which the bill that became Act No. 776 was discussed. Minutes of Meeting, House Committee on House and Governmental Affairs, June 3, 1999, p. 6 ("Senator Jones agreed with Representative Bruneau that the Code of Civil Procedure [sic] currently includes such a provision, but stated there is an exception pertaining to workers' compensation agreements.").
While the cases cited above were undoubtedly correctly reasoned and resolved, there is no such prohibition from applying the provisions of La. C.C. art. 3071 to the instant case. As we have already explained, La. R.S. 23:1272 does not apply to the facts presented. Although La. R.S. 23:1272 does create "an exception to other general statutory ... rules of compromise and supersedes them in the area in which it is intended to operate," Smith, 392 So.2d at 402, the statute is not intended to operate in areas such as this where the agreement is not in exchange for the full and final discharge and release of the employer from liability under the Workers' Compensation Act. In cases to which La. R.S. 23:1272 does apply, however, its requirements must be satisfied and the general provisions of La. C.C. art. 3071 continue to be inapplicable.
Utilizing Article 3071 in this case does not frustrate the stated policy that it is in the best interest of the injured worker to receive benefit payments on a periodic basis. Claimant in this case has merely agreed to compromise outstanding claims *1106 from the date of his injury to the date of the agreement. He reserved his rights to all future compensation and may continue to receive weekly benefits. The safeguards provided by La. R.S. 23:1271 through 1274, which were designed to prevent an employee from being coerced due to the economic pressures on an injured worker to settle quickly, Colbert, 446 So.2d at 1206, and to provide weekly benefits, rather than lump sum payments, sufficient to provide ongoing support for the injured worker, Gauthier v. General Acc. Fire & Life Assur. Corp., Ltd., 573 So.2d 462, 465 (La.1991), are not immediately necessary where the claimant has reserved his rights to future benefits and is not agreeing to a full and final discharge and release of his employer from liability under the Act. Furthermore, there is no allegation or indication that claimant was coerced in any way by defendant to enter into the agreement or that the agreement was deceitful or unfair.
The parties in this case agreed to put an end to the litigation before the hearing officer and recited the terms of the agreement, which were capable of being transcribed from the record of the proceeding, in open court. Our review of the transcript of the proceeding convinces us that a valid compromise was entered into by the parties on October 21, 2002. The hearing officer accepted and approved the compromise, and her statement that "I will sign off on documents once they're presented" did not serve to make the enforceability of the compromise contingent upon her signature. The Article clearly provides that "[the] agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form." The record is unclear regarding the nature of the documents referred to by the hearing officer, but she may have been contemplating signing a written agreement memorializing the terms recited in open court, which would serve as a more convenient written form, or she may have been contemplating signing a dismissal.[3] In any case, because the requirements for an oral compromise pursuant to La. C.C. art. 3071 were satisfied, it was unnecessary for the hearing officer to sign anything for the agreement to be enforceable. See Colbert, 446 So.2d at 1206 (stating that both forms of compromise, whether written or recited in open court, may be judicially enforced).
Defendant claims that a final and enforceable compromise could not have been reached on October 21, 2002, because there was no meeting of the minds. According to defendant, there was no meeting of the minds because it had always considered the execution of a receipt and release by claimant a condition of the settlement. We find this argument is without merit.
A compromise instrument constitutes the law between the parties and must be interpreted in accordance with the intent of the parties. Ortego v. State, Dept. of Transp. & Dev., 96-1322, p. 7 (La.2/25/97), 689 So.2d 1358, 1363. The compromise instrument is governed by the same general rules of construction that are applicable to contracts. Id. The general rule of construction is provided by La. C.C. art.2046, which states that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be *1107 made in search of the parties' intent." Further, a compromise extends only to those matters the parties intended to settle and the scope of the transaction cannot be extended by implication. La. C.C. art. 3073; Ortego, 96-1322 at p. 7, 689 So.2d at 1363; Brown v. Drillers, Inc., 93-1019 at p. 7, 630 So.2d at 748. Courts apply this rule of construction in light of the general principle that the instrument must be considered as a whole and in light of attending events and circumstances. Ortego, 96-1322 at p. 7, 689 So.2d at 1363; Brown v. Drillers, Inc., 93-1019 at p. 8, 630 So.2d at 748.
The meaning and intent of the parties to a compromise is ordinarily determined from the four corners of the instrument, and extrinsic evidence is inadmissible to explain or to contradict the terms of the instrument. Ortego, 96-1322 at p. 7, 689 So.2d at 1363. When a dispute occurs regarding the scope of a compromise, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle, but absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument to ascertain the parties' intent. Brown v. Drillers, Inc., 93-1019 at p. 9, 630 So.2d at 749.
The transcript of the October 21, 2002, proceeding clearly evidences defendant's intent to pay claimant a total of $27,500.00, including penalties and attorney fees, to reimburse any drug co-payments claimant made to the pharmacy, and to pay any related medical bills outstanding as of the date of the agreement. The intent of the parties to reserve claimant's rights to future benefits under the Act, including weekly and medical benefits, was clearly expressed. The execution of a receipt and release as a condition of the compromise was never mentioned. At the beginning of the recitation of the terms of the compromise, the hearing officer specifically asked the parties if they would "like to enter terms and conditions of any settlement on the record." Defendant's attorney replied, "I will, Your Honor.... [M]y client has agreed to pay the following sums to Mr. Trahan at this point." The terms were then recited by defendant's attorney and agreed to by claimant's attorney. Following the recitation of the terms, the hearing officer inquired as to whether there was anything further to come before it in this matter, and both attorneys replied there was not. In light of the specific and detailed nature of the recitation of the terms of the agreement by defendant's own counsel and the absence of any mention of a receipt and release, we find the parties did not intend the settlement to be conditioned upon the execution of a receipt and release.[4] Defendant's claim that there was no meeting of the minds is untenable.
Having determined that a valid and enforceable compromise was entered into by the parties on October 21, 2002, the next issue we must resolve is whether the compromise constitutes a "final, non-appealable judgment" such that penalties and attorney fees may be awarded pursuant to La. R.S. 23:1201(G).
Our courts of appeal have not necessarily agreed on the proper resolution of this issue. See, e.g., Sedgwick Claims Mgmt. Serv. Inc. v. Cormier, 02-0216 (La.App. 3 Cir. 3/26/03), 841 So.2d 1032, writ denied, 03-1185 (La.6/20/03), 847 So.2d 1234; *1108 Richard v. Our Lady of Lourdes Reg'l Med. Ctr., Inc., 02-0571 (La.App. 3 Cir. 10/30/02), 829 So.2d 1147 (both holding that an oral settlement under La. R.S. 23:1272 is a final, non-appealable judgment under La. R.S. 23:1201(G)); Daniel v. Wal-Mart Stores, Inc., 36,451 (La.App. 2 Cir. 12/11/02), 833 So.2d 1047 (oral recitation of settlement followed by a court order for defendant to prepare a written judgment was not sufficiently clear to warrant the imposition of penalties) and Kessel v. Hotel Dieu Hosp., 02-0896 (La.App. 4 Cir. 10/16/02), 830 So.2d 1057 (penalties begin to run from date joint petition for judgment signed by court), writ denied, 02-2770 (La.1/24/03), 836 So.2d 49.
Awards of penalties and attorney fees in workers' compensation cases are essentially penal in nature, and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers. Williams v. Rush Masonry, Inc., 98-2271, pp. 8-9 (La.6/29/99), 737 So.2d 41, 46. While the benefits conferred by the Workers' Compensation Act are to be liberally construed, penal statutes are to be strictly construed. Id. at p. 9, 737 So.2d at 46. La. R.S. 23:1201(G) is a penal statute which must be strictly construed. Smith v. Quarles Drilling Co., 04-0179, p. 7 (La.10/29/04), 885 So.2d 562, 566.
La. R.S. 23:1201(G) provides for penalties and attorney fees as follows:
G. If any award payable under the terms of a final, non-appealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results from conditions over which the employer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance. The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.
Thus, if the compromise entered into by the parties on October 21, 2002, constitutes a "final, non-appealable judgment," then claimant is eligible for an award of penalties and attorney fees, unless defendant's failure to pay within thirty days resulted from conditions over which it had no control.
A compromise has the legal efficacy of a judgment that possesses "a force equal to the authority of things adjudged." La. C.C. art. 3078. See also Ortego, 96-1322 at p. 6, 689 So.2d at 1363; Brown v. Drillers, Inc., 93-1019 at p. 5, 630 So.2d at 747. Additionally, "[a]n appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in the judgment rendered against him." La. C.C.P. art.2085. Although the term "confession" is not defined by the Code of Civil Procedure, the jurisprudence has defined it as "an admission by a party, in pleadings or in evidence, of the validity of his opponent's claim in such a way as to leave no issue to be tried." La. C.C.P. art.2085 cmt. (c).
We find the compromise entered into by the parties constitutes a confession of judgment such that defendant was not entitled to an appeal. By agreeing to pay certain sums to claimant in exchange for ending the pending litigation and reciting the specific terms of the agreement in open court, defendant confessed judgment in the proceeding. Defendant's consent *1109 amounted to an admission of the validity of the claim against it.[5] Because defendant confessed judgment, it could not appeal the compromise. We therefore conclude that the compromise entered into by the parties on October 21, 2002, included an award payable and constituted a final, non-appealable judgment for purposes of La. R.S. 23:1201(G).
Defendant failed to unconditionally tender payment in accordance with the compromise within thirty days. Defendant contends, however, that its nonpayment resulted from conditions over which it had no control because it considered the execution of a receipt and release a condition of the settlement and because the hearing officer contemplated submission of settlement documents. As explained above, there is no evidence that the parties intended the compromise to be conditioned on the execution of a receipt and release and defendant's assertions in this regard are untenable in light of the record. Claimant was well within his rights to refuse to sign the proposed receipt and release as such a document was not part of the compromise. Additionally, the compromise was established by law without the necessity of the hearing officer's signature on any "settlement documents." La. C.C. art. 3071 is clear that although the substance of the agreement may later be written in a more convenient form, the recitation in open court of the agreement confers upon the parties the right of judicial performance. Defendant's contention that its nonpayment of the award resulted from conditions over which it had no control because the hearing officer stated that she would sign off on settlement documents once they were presented is without merit.
Because the compromise was a final, nonappealable judgment and defendant's failure to pay the award within thirty days after it became due did not result from conditions over which it had no control, the hearing officer did not err in awarding claimant penalties and attorney fees as provided by La. R.S. 23:1201(G).
Likewise, we find claimant is entitled to record a certified copy of the transcript into the mortgage records pursuant to La. R.S. 23:1201.3. That statute provides in pertinent part:
A. If payment of compensation or an installment payment of compensation due under the terms of an award, except in case of appeals from an award, is not made within ten days after the same is *1110 due by the employer or insurance carrier liable therefor, the workers' compensation judge may order a certified copy of the award to be filed in the office of the clerk of court of any parish, which award whether accumulative or lump sum, when recorded in the mortgage records, shall be a judicial mortgage as provided in Civil Code Article 3299....
The compromise entered into by the parties on October 21, 2002, required defendant to pay claimant certain sums due under the Workers' Compensation Act. The compromise became enforceable when the agreement was recited in open court and capable of being transcribed from the record of the proceeding. We find the creation of a valid and enforceable compromise is sufficient to constitute an "award" for purposes of La. R.S. 23:1201.3. Consequently, claimant is entitled to file a certified copy of the transcript, i.e., the award, in the mortgage records.

CONCLUSION
Because the agreement entered into by the parties reserved claimant's rights to future workers' compensation benefits, it was not a lump sum payment or compromise settlement in exchange for full and final discharge and release of the employer and/or his insurer from liability under the Workers' Compensation Act. Consequently, La. R.S. 23:1272 is inapplicable to the facts of this case. The parties did, however, enter into a valid compromise pursuant to La. C.C. art. 3071 when their agreement was recited in open court and capable of being transcribed from the record of the proceeding. This compromise constituted a final, nonappealable judgment for purposes of an award of penalties and attorney fees under La. R.S. 23:1201(G) and an award for purposes of La. R.S. 23:1201.3. A review of each of defendant's assignments of error reveals they are without merit.

DECREE
For the reasons stated herein, the judgments of the Office of Workers' Compensation and the court of appeal are affirmed.
AFFIRMED.
CALOGERO, C.J., concurs and assigns reasons.
VICTORY, J., dissents and assigns reasons.
TRAYLOR, J., dissents.
CALOGERO, Chief Justice, concurs and assigns reasons.
I agree with the majority's conclusion that the claimant is entitled to penalties and attorney fees under La.Rev.Stat. 23:1201(G) and may file a certified copy of the parties' settlement into the records under La.Rev.Stat. 1201.1.3. I do not agree, however, with the majority's decision not to apply La.Rev.Stat. 23:1272(A) as a means of validating the parties' agreement, and with its application of the general provisions of Civil Code article 3071 as a fallback.
The interpretive problem stems from the initial clause of R.S. 23:1272(A): "A lump sum or compromise settlement entered into by the parties under R.S. 23:1271 shall be presented to the workers compensation judge...." (Emphasis added). The majority suggests that, because R.S. 23:1272(A) only applies to settlements "under R.S. 23:1271," consideration of the provisions of R.S. 23:1271 is necessary. The majority then observes that the second sentence of R.S. 23:1271(A) refers to settlements "in exchange for full and final discharge and release of the employer, his insurer, or both from liability under this Chapter," and imposes special conditions upon such settlements. The majority reasons that this language mandates that, to *1111 establish the existence of a lump sum or compromise settlement under R.S. 23:1271(A), the claimant must show that the employer has been fully and finally discharged from all workers' compensation liability. And, a claimant cannot show a lump sum or compromise settlement "under R.S. 23:1271," for purposes of R.S. 23:1272(A), unless the employer has been fully and finally discharged. Thus, the provisions of R.S. 23:1272(A) do not apply to a partial settlement, the majority holds, because such a settlement is not one "under R.S. 23:1271."
Contrary to the majority's approach, I would hold that R.S. 23:1272(A) does apply to the parties' agreement in this case, notwithstanding the "full and final discharge" language of R.S. 23:1271. I would reason, as did the court of appeal, that this language "does not make settlement contingent on the full and final discharge and release of the employer." Trahan v. Coca Cola Bottling Co. United, Inc., 2003-827 (La.App. 3 Cir. 12/10/03), 861 So.2d 783, 789. Rather, this language merely creates a special class of settlements, those in exchange for full and final release of the employer, that are subject to certain special conditions. Or, in the alternative, if "full and final discharge" is required, I would hold that the parties' settlement did fully and finally discharge Coca Cola from all liability on the discrete issue of past due benefits. Id.[1]
As the court of appeal observed, enforcing the parties' partial settlement under R.S. 23:1272(A) better fulfills the stated policy (preference) of R.S. 23:1271(A), that the injured worker receive benefit payments on a periodic basis. Id. Rather than settling all claims definitively, the parties' settlement in this case has to do solely with disputes regarding past payments and preserves the claimant's right to receive periodic payments of future benefits. The majority presumably would apply the relaxed form requirements of 23:1272(A), permitting oral recitation of a settlement into the record, only where the employer is completely released from all liability for workers' compensation, including future liability. But, a settlement that completely releases the employer from all worker's compensation liability is in derogation of the stated preference of 23:1271(A), and is subject to more rigorous requirements under that provision. It strains logic to interpret these worker's compensation statutes as permitting a relaxed form for settlements that completely release the employer from liability, while requiring adherence to strict form requirements with respect to partial settlements that preserve a claimant's right to future payments of periodic benefits. Thus, the majority's interpretation does not further the Act's stated policy goal with respect to settlements.
Further, applying 23:1272(A) in this case would avoid the necessity of resorting to the general provisions of article 3071, and upsetting, as the majority does, established jurisprudence of this court holding that this article does not apply to lump sum or compromise settlements in workers' compensation cases. See, e.g., Colbert v. Louisiana State Univ. Dental Sch., 446 So.2d 1204 (La.1984); Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980); Puchner v. Employers' Liab. Assur. Corp., 198 La. 921, 5 So.2d 288 (1941) (on rehearing).
*1112 Thus, because I disagree with the majority's resort to a general Civil Code provision, and its failure to apply the more relevant and applicable provision of the Workers' Compensation Act, I concur in the imposition of penalties and attorney fees while not joining fully with the majority's reasons.
VICTORY, J., dissenting.
While I agree that La. R.S. 23:1272(A) is inapplicable to this case as it does not involve a lump sum or compromise settlement, and that pursuant to La. C.C. art. 3071, the oral settlement is valid and enforceable, I dissent from the majority's finding that the oral settlement recited in the record on October 21, 2002 is a "final nonappealable judgment," subjecting the defendant to penalties and attorney fees under La. R.S. 23:1201(G) and entitling the claimant to file a certified copy of the transcript into the mortgage records pursuant to La. R.S. 23:1201.3.
Awards of penalties and attorney fees in workers' compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 46. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Id. La. R.S. 23:1201(G) mandates the imposition of penalties and attorney fees "if any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due," unless "such nonpayment results from conditions over which the employer had no control." La. R.S. 23:1201(G).
Because La. R.S. 23:1201(G) must be strictly construed, in my view, the 30-day time period within which an award must be paid does not begin to run until a written judgment is signed by the workers' compensation judge. First, and foremost, Article 1911 of the Code of Civil Procedure provides that "[e]xcept as provided by law, every final judgment shall be signed by the judge."[1] La. C.C.P. Art.1918 further provides that "[a] final judgment shall be identified as such by appropriate language." La. R.S. 23:1201(G) clearly refers to a "final nonappealable judgment." There is no exception provided in the workers' compensation act that final judgments under La. R.S. 23:1201(G) do not have to be in writing signed by the judge. Further, there is no indication that, by allowing parties in a workers' compensation case to present a settlement by oral recitation in the record, the legislature intended to create such an exception. Thirdly, the certainty provided by a signed, written judgment is required in light of the penal nature of the penalty provisions of La. R.S. 23:1201.
The majority transforms the oral settlement constitutes into a final, nonappealable judgment by finding that it is a "confession of judgment" under La. C.C.P. art.2085. However, this Court has expressly held that an oral settlement in a workers' compensation case is not a confession of judgment under La. C.C.P. art.2085. Colbert v. Louisiana State Univ. Dental Sch., 446 So.2d 1204, 1206 (La.1984).
Thus, in my view, the oral settlement recited in open court is not a final, nonappealable judgment under La. R.S. 23:1201(G) and defendant is not liable for penalties and attorneys fees. In order for *1113 that statute to become applicable, the plaintiff would need to go to court and obtain a judgment reflecting the oral settlement. At that point, if the judgment was not paid within 30 days after it becomes due under the terms of the judgment, defendant would be liable for penalties and attorney fees. Further, for the same reasons that Coke is not liable for penalties and attorney fees under La. R.S. 23:1201(G), I would find that Trahan is not entitled to record the oral settlement into the mortgage records under La. R.S. 23:1201.3.
For the above reasons, I respectfully dissent.
NOTES
[1] A lump sum settlement is distinct from a compromise settlement. A "lump sum settlement" is an agreement between the parties to pay sums admittedly due, and otherwise payable in weekly amounts, in a lump sum discounted to present value within statutory restrictions. It is not a settlement of disputed issues between the parties. A "compromise" is an agreement between the parties to resolve disputes between them by the payment of compensation, often in a single amount. 14 H. ALSTON JOHNSTON III, LOUISIANA CIVIL LAW TREATISE: WORKERS' COMPENSATION LAW AND PRACTICE § 387 (4th ed.2002). The instant case does not involve a lump sum settlement.
[2] Although not relevant to this case, there is a specific statute dealing with the procedure for lump sum settlements. La. R.S. 23:1274 provides:

A. The amounts payable as compensation may be commuted to a lump sum settlement by agreement if approved by the workers' compensation judge as provided in this Part. In a lump sum settlement, the payments due the employee or his dependents shall not be discounted at a greater rate than eight percent per annum.
B. If the lump sum settlement is made without the approval of the workers' compensation judge, or at a discount greater than eight percent per annum, even if approved by the director or the workers' compensation judge, the employer shall be liable for compensation at one and one-half times the rate fixed by this Chapter. At any time within two years after date of the payment of the lump sum settlement and notwithstanding any other provision of this Chapter, the claimant shall be entitled to demand and receive in a lump sum from the employer such additional payment as together with the amount already paid, will aggregate one and one-half times the compensation which would have been due but for such lump sum settlement.
C. Upon payment of a lump sum settlement commuted on a term agreed upon by the parties, approved by the workers' compensation judge, and discounted at not more than eight percent per annum, the liability of the employer or his insurer making the payment shall be fully satisfied.
D. For the settlement of compensation claims as provided in R.S. 23:1231 through 1236 the following procedure shall be followed. The claimant must present to the employer an affidavit of death of the employee, proper proof of the claimant's relationship to the deceased and his legal right to the compensation benefits. Such documentation shall be affixed to the joint petition and submitted to the workers' compensation judge for approval as hereinabove provided.
[3] The record reveals that although claimant's attorney refused to sign a receipt and release subsequent to the October 21 proceeding because he did not believe it was included in the terms of the agreement, he did propose to sign a dismissal consistent with the terms of the compromise.
[4] In addition to the fact that there is no evidence the parties intended the settlement to be conditioned upon the execution of a receipt and release, at oral argument before this court defense counsel admitted that the proposed written release was "more detailed" than the terms recited in open court.
[5] This court used similar reasoning in Martin v. Holzer Sheet Metal Works, Inc., 376 So.2d 500 (La.1979), a workers' compensation case that arose prior to the 1999 amendment to La. R.S. 23:1272(A) in which the parties appeared in open court on the day of trial and orally agreed to a compromise. About one month following the proceeding in open court, the trial judge signed a judgment in accordance with the stipulated terms without objection by the employer. The employer appealed from the signed judgment. This court reversed the court of appeal's denial of Martin's motion to dismiss the appeal, finding that the oral agreement recited in open court constituted a confession of judgment under La. C.C.P. art.2085. In Colbert, this court found that the terms of La. R.S. 23:1272 as they existed at that time did not allow an oral settlement in open court to give rise to an enforceable agreement and stated, "Martin's suggestion that an in court oral settlement, without more, acts as a confession of judgment is erroneous, insofar as it applies to the approval of a compromise settlement of a disputed workmen's compensation claim, and to this extent, is overruled." Colbert, 446 So.2d at 1206. Only three Justices agreed with this statement, however, as two Justices concurred on the basis that Martin should not be overruled and two Justices dissented. In any case, it appears that Colbert's objection to the Martin analysis was based on the applicability and terms of La. R.S. 23:1272 prior to its amendment in 1999.
[1] See also 14 ALSTON JOHNSTON III, LOUISIANA CIVIL LAW TREATISE: WORKERS' COMPENSATION LAW AND PRACTICE § 387 (4th ed. 2002) ("Any bona fide dispute between the employee and the employer, on any issue relevant to the entitlement to compensation payments, will furnish sufficient ground for a valid compromise agreement.") (emphasis added).
[1] In the absence of procedural guidelines applicable to workers' compensation cases, the general procedural devices of the Code of Civil Procedure are applicable. Smith v. Cajun Insulation, Inc., 392 So.2d 398, 401 (La.1980).