STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**CHRISTOPHER AYRO**

**VERSUS**

**WILLSTAFF, INC.**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION
DISTRICT 09, NO. 13-00380
ELIZABETH CLAIRE LANIER, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS
JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and James T. Genovese, Judges.

**AFFIRMED IN PART; REVERSED IN PART.**

Christopher Ayro
In Proper Person
1434 Copp Street, Trailer B
Jeanerette, LA 70544

Rene S. Paysse, Jr.
Rachel M. Riser
Johnson, Johnson, Barrios & Yacoubian
701 Poydras Street, Suite 4700
New Orleans, LA 70139
(504) 528-3001
COUNSEL FOR DEFENDANT/APPELLEE
      Willstaff, Inc.

**COOKS, Judge.**

This litigation arises out of a workers' compensation claim filed by Christopher Ayro (Ayro) against his employer, Willstaff, Inc. (Willstaff) on April 22, 2009. Ayro alleged he sustained a work-related injury on March 9, 2006, while employed as a laborer/helper for Willstaff at the Bayou Companies, Inc. facility in New Iberia. Specifically, Ayro asserted he injured his back when a pipe rolled off of a rack and struck him on the back.

The matter proceeded to trial on September 28, 2011, before the Office of Workers' Compensation. The workers' compensation judge (WCJ) found in favor of the employer and dismissed Ayro's claim. The WCJ noted that Ayro's treating orthopedic surgeon, Dr. Mark McDonnell, found no future medical treatment was necessary. Ayro was discharged to full-duty work by his treating physician thus benefits were properly terminated by the employer. An appeal was initially filed by Ayro, but it was subsequently abandoned and dismissed by this court.

On November 8, 2011, Ayro filed another claim with the Office of Workers' Compensation seeking recovery of workers' compensation benefits in connection with the same March 9, 2006 accident. Ayro asserted the same allegations as before, seeking wage benefits and medical treatment for the injuries allegedly sustained on March 9, 2006. The WCJ, on her own motion, appointed Dr. Todd Cowen to conduct an independent medical examination (IME) to address Ayro's medical condition. Dr. Cowen concluded Ayro required no further medical treatment as the lumbar contusion/strain should have resolved years ago. Dr. Cowen also determined Ayro was capable of returning to full-duty work.

Although the IME supported the employer's contention that no further benefits were warranted, the employer entered into settlement negotiations with Ayro's counsel to "resolve this matter without the necessity of further legal proceedings." The employer agreed to settle the matter with Ayro for $3,000.00 in

exchange for a full and final settlement of Ayro's workers' compensation claim, including a release of any and all potential claims for future workers' compensation benefits and/or medical expenses. The parties executed settlement documents, including a "Joint Petition for Approval of Workers' Compensation Settlement," which provided:

> In order to compromise and settle said disputes and avoid the uncertainties of litigation, Willstaff Company has offered to pay Christopher Ayro for his account the sum of **THREE THOUSAND AND NO/100 ($3,000.00) DOLLARS** on the condition that Christopher Ayro dismisses, with prejudice, his workers' compensation suit against Willstaff Company and Broadspire and accepts the sum of **THREE THOUSAND AND NO/100 ($3,000.00) DOLLARS** in full and final settlement, satisfaction and compromise of any and all claims for workers' compensation benefits, damages, liens, expenses and attorney's fees, which Christopher Ayro now has or may hereafter acquire against Willstaff Company and/or Broadspire for any and all accident or injuries sustained by Christopher Ayro while employed by Willstaff Company prior to the date of the settlement herein, including specifically, but not exclusively, the alleged accidental injury of March 9, 2006, subject, however, to the approval of the Office of Workers' Compensation.

In addition, an affidavit was executed by Mr. Ayro, wherein he attested the following:

> [H]e is the petitioning employee in the foregoing Joint Petition for Approval of Workers' Compensation Settlement; that he has had the Joint Petition for Approval of Workers' Compensation Settlement read to him and fully explained by Robert M. Martina, his attorney in fact; that the allegations contained therein and made by him are true and correct; that he has discussed the Joint Petition for Approval of Workers' Compensation Settlement fully with Robert M. Martina, his attorney; and that he fully understands it and has entered into this compromise settlement freely and voluntarily and with full knowledge of its contents and meaning; and that he wishes to waive any rights he may have with respect to a six (6) month waiting requirement under R.S. 23:1271.

In connection with the Joint Petition for Approval of Workers' Compensation Settlement, Ayro executed a "Receipt and Release" agreement. That agreement contained a stipulated damages provision whereby Aryo agreed that he would not initiate or file any suit against Willstaff or Broadspire in connection with the accident in question **and** that he would pay Willstaff and

2

Broadspire $5,000.00 in damages should he initiate or file any such suit. Ayro executed an affidavit attesting "that he has read the above and foregoing Receipt and Release in its entirety; that he understands the contents thereof in full and without reservation; that he desires to sign his name thereto in return for the purposes stated therein as his own free act and deed." Plaintiff's counsel also executed an Affidavit in connection with the settlement agreement and specifically the Receipt and Release, attesting:

> [I] explained to Christopher Ayro the nature of his rights, causes of action, claims and demands as stated in the foregoing Receipt and Release, including, but not limited to those rights and causes of action, claims and demands arising under the Louisiana Workers' compensation laws and any other laws of the State of Louisiana or any other state.

Despite the executed documents, Ayro filed another claim for compensation against Willstaff on December 24, 2012, seeking recovery of workers' compensation benefits, disability status, and medical treatment in connection with the March 9, 2006 accident. Ayro also filed a Motion to Rescind the court-approved settlement agreement. In response, Willstaff filed an Opposition to the Motion to Rescind and a Reconventional Demand based on the stipulated damages provision contained in the Receipt and Release. Willstaff then filed a Motion for Summary Judgment seeking a dismissal of Ayro's claims and enforcement of the stipulated damages provision the Receipt and Release agreement.

On April 16, 2013, a hearing was held on Ayro's Motion to Rescind Settlement and Willstaff's Motion for Summary Judgment. Ayro was not represented by counsel at the hearing, appearing in proper person. The WCJ found the prior settlement was valid, noting the parties were represented by counsel at that time, and the settlement was entered into both knowingly and voluntarily. The WCJ also specifically found Ayro was competent at the time he executed the settlement documents. Accordingly, the WCJ dismissed the December 24, 2012

disputed claim for compensation filed by Ayro finding it was in violation of the terms of the Release and Receipt. The WCJ also ordered Ayro to pay the stipulated damages of $5,000.00 as required by the signed agreements. Ayro has filed an appeal with this court, requesting that we overturn the WCJ's decision.

**ANALYSIS**

In *Minor v. J & J Carpet, Inc.*, 10-45, pp. 2-3 (La.App. 3 Cir. 6/2/10), 40 So.3d 434, 436-37 (alteration inoriginal), we set forth the appellate standard of review in workers' compensation cases:

> It is well settled that the standard of review applied in workers' compensation cases is the "manifest error-clearly wrong" standard. *Dean v. Southmark Constr.*, 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117.

> Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. *Alexander [v. Pellerin Marble & Granite*, 93-1698 (La.1/14/94) ], 630 So.2d [706,] 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir.2003), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Robinson*, 865 So.2d at 105. The determination of whether injury occurred in the course and scope of employment is a mixed question of law and fact. *Winkler v. Wadleigh Offshore, Inc.*, 01-1833 (La.App. 4 Cir. 4/24/02), 817 So.2d 313, 316 (*citing Wright v. Skate Country, Inc.*, 98-0217 (La.App. 4 Cir. 5/12/99), 734 So.2d 874.

> *Id*.

Initially, we note Ayro has represented himself throughout the pendency of this appeal. The briefs filed with this court are difficult to understand, but clearly indicate his belief that he is entitled to additional benefits under the law. The record, however, does not support Ayro's belief.

4

Trial was held on September 28, 2011, before the Office of Workers' Compensation (OWC) concerning the claims asserted in the first disputed claim for compensation filed by Ayro. That claim pertained to the alleged work-accident of March 9, 2006. At the conclusion of Ayro's case, which included the introduction of all pertinent medical records, the WCJ granted Willstaff's Motion for Involuntary Dismissal. On July 11, 2012, this court dismissed Ayro's appeal for failure to file a brief.

Despite the dismissal, Ayro filed a second disputed claim for compensation seeking the same relief as sought in the prior claim. In response, Willstaff filed an Exception of *Lis Pendens* and an Exception of *Res Judicata*. On her own motion, the WCJ requested an IME to address Ayro's medical condition. The IME physician determined Ayro required no further medical treatment and was capable of returning to full-duty work. Prior to the hearing on Willstaff's exceptions, the parties negotiated a full and final compromise lump-sum settlement. Ayro was represented by counsel at this time and was informed by his counsel regarding the legal effect of the settlement.

A Petition for Approval of Workers' Compensation Settlement was filed by the parties on September 24, 2012. Louisiana Revised Statutes 23:1272 sets forth the requirements for approval of compromise settlements in workers' compensation cases and provides in pertinent part:

> A. A lump sum or compromise settlement entered into by the parties under R.S. 23:1271 shall be presented to the workers' compensation judge for approval through a petition signed by all parties and verified by the employee or his dependent, or by recitation of the terms of the settlement and acknowledgement by the parties in open court which is capable of being transcribed from the record of the proceeding.
>
> B. When the employee or his dependent is represented by counsel, and if attached to the petition presented to the workers' compensation judge are affidavits of the employee or his dependent and of his counsel certifying each one of the following items: (1) the attorney has explained the rights of the employee or dependent and

5

the consequences of the settlement to him; and (2) that such employee or dependent understands his rights and the consequences of entering into the settlement, then the workers' compensation judge shall approve the settlement by order, and the order shall not thereafter be set aside or modified except for fraud or misrepresentation made by any party.

The record establishes the requirements of La.R.S. 23:1272 were met in this case. Ayro was represented by counsel, affidavits were executed certifying that Ayro was explained his rights and the consequences of the settlement to him and that he understood said rights and consequences. After reviewing the Joint Petition for Approval of Workers' Compensation Settlement and the attached affidavits, the WCJ signed an Order approving the settlement. Therefore, pursuant to La.R.S. 23:1272(B), the Order "shall not thereafter be set aside or modified except for fraud or misrepresentation made by any party."

We can find no evidence in the record of fraud or misrepresentation. Furthermore, no allegations of fraud or misrepresentation were made in any of Ayro's Disputed Claims for Compensation or to the WCJ at the hearing on the Motion to Rescind. Therefore, we find no error in the WCJ's denial of the Motion to Rescind.

The primary thrust of Ayro's arguments to the WCJ and, on appeal, is that he was incompetent, and thus, the settlement agreement should be set aside. However, no evidence has been presented to support Ayro's contention that the settlement should be set aside because he was incompetent. Ayro's own testimony at the hearing on the Motion to Rescind belies his argument that he was incompetent such as to render the settlement documents signed by him invalid.

At the hearing the WCJ questioned Ayro regarding his allegations of incompetence. Ayro testified to the court he was not under the influence of drugs at that time and was represented by counsel. He testified his attorney explained to him the terms and effects of the settlement agreement. Ayro also stated he was not

6

harassed into accepting the settlement, and he freely signed the paperwork. Accordingly, the WCJ determined Ayro was not incompetent and was not under any legal duress. We find nothing in the record to dispute this finding by the WCJ.

Lastly, Ayro argues the WCJ erred in concluding he breached the Receipt and Release agreement by filing another Disputed Claim for Compensation and in enforcing the stipulated damages clause in the Receipt and Release Agreement. That agreement (set forth earlier in this opinion) provided that Ayro would dismiss, with prejudice, his workers' compensation suit against Willstaff in exchange for the settlement amount of $3,000.00. The parties agreed that "the sums agreed by this settlement agreement amount to more than Willstaff Company believes to be due to Christopher Ayro and amount to less than Christopher Ayro believes to be due to him." The agreement is clearly a lump-sum settlement resolving "any and all" workers' compensation claims Ayro may have against Willstaff relating to his alleged injuries of March 9, 2006.

In addition to releasing all claims for workers' compensation benefits, the Receipt and Release contained a stipulated damages provision whereby Ayro agreed that he would pay Willstaff $5,000.00 should he initiate or file any suit against Willstaff. We find this provision is not enforceable. Nowhere in the Louisiana Workers' Compensation Act is such a penalty or punitive damage award permitted against a workers' compensation claimant. "When a settlement is for a lump sum to resolve all claims, a party's right to enforce the settlement agreement is dictated by La.R.S. 23:1271 and 1272. *Trahan v. Coca Cola Bottling Co. United*, 04-100 (La.3/2/05), 894 So.2d 1096." *Young v. Jack In The Box, Inc*. 05-1573 p. 2 (La.App. 3 Cir. 5/3/06), 929 So.2d 855, 857 (footnote omitted), *writ denied*, 06-1357 (La.9/22/06), 937 SO.2d 390. There are no provisions in either of these statutes which impose such a punitive award or stipulated damage against a workers' compensation claimant. The Louisiana State Supreme Court has clearly

7

held that it is only when the settlement is not a lump-sum agreement and does not release future claims do we apply the provisions of La.Civ.Code art. 3071 to such compromise agreements. *Trahan*, 894 So. 2d 1096. When, as here, the compromise agreement is a lump sum settlement resolving any and all claims, past and future, which a workers' compensation claimant may have, we must exclusively apply the provisions of the Louisiana Workers' Compensation Act, as set forth in *Trahan*, 894 So.2d at 1104-05:

> This court has previously refused to apply the provisions of La. C.C. art. 3071 to cases involving lump sum settlements or compromises of workers' compensation claims. *See, e.g., Colbert v. Louisiana State Univ. Dental Sch.*, 446 So.2d 1204 (La.1984); *Smith v. Cajun Insulation, Inc.*, 392 So.2d 398 (La.1980); *Puchner v. Employers' Liab. Assur. Corp.*, 198 La. 921, 5 So.2d 288 (1941) (on rehearing). These cases, however, involved lump sum settlements or compromises of workers' compensation claims that fit squarely under the provisions of the Workers' Compensation Act (as they existed at the time) governing such settlement or compromises. Additionally, the more general provisions of Article 3071 were in conflict with the specific procedures required for lump sum settlements of compromises of workers' compensation claims. Finally, the agreements sought to be enforced would have released the employer from all liability under the Workers' Compensation Act, thereby providing the injured worker with no further periodic payments.

This court reiterated this holding in *Tyson v. Thompson Home Health*, 10-1040 (La.App. 3 Cir. 3/16/11), 59 So.3d 509, *writ denied* 11-0760 (La. 10/25/11), 79 So.3d 246. In *Tyson*, we addressed the claimant's entitlement to statutory attorney fees and penalties for the employer's failure to timely pay after the compromise agreement was reached. We applied the provisions of the Workers' Compensation Act to resolve the dispute, holding that "[w]hen a settlement constitutes a final, non-appealable judgment, whether the claimant is entitled to penalties and attorney fees is governed by La.R.S. 23:1201(G)." *Tyson,* 59 So.3d at 512, citing *Young*. In *Sanders v. Harrisonburg Nursing Home*, 95-114, p. 4 (La.App. 3 Cir. 5/31/95), 657 So.2d 394, 396, *writ denied*, 95-1629 (La. 10/6/95), 661 So.2d 469, we clearly stated, "Because the Workers' Compensation Act

8

provides for compromise settlements, these specific provisions are controlling." In *Sanders*, we relied on our holding in *Ryder v. Industrial Construction Co.*, 616 So.2d 857, 859 (La.App. 3 Cir.), *writ denied*, 619 So.2d 1068, (La.1993) wherein we refused to apply the Louisiana Civil Code articles regarding compromise agreements to a lump sum workers' compensation compromise agreement, holding:

> Appellants first assert that the hearing officer erred in failing to recognize that the compromise agreement is controlled by La.C.C. art. 1767, *et. seq.*, regarding conditional obligations. However, we find that, as the Workers' Compensation Act specifically provides for compromise settlements, these specific provisions are controlling. See *Watkins v. May Brothers, Inc.*, 147 So.2d 763 (La.App. 3 Cir. 1962), (the general principles of transaction and compromise must yield to the special laws in the Workers' Compensation Act).

Accordingly, that portion of the compromise agreement imposing a $5,000.00 penalty on Ayro is not enforceable. No such penalty is provided by the Workers' Compensation Act.

## DECREE

For the reasons stated, we reverse the WCJ's ruling ordering Ayro to pay Willstaff the sum of $5,000.00. In all other respects we affirm the WCJ's ruling. All costs of this appeal are assessed fifty-percent against Willstaff and fifty-percent against Ayro.

**AFFIRMED IN PART; REVERSED IN PART.**